IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 1:19-cr-00256-RDA |
| DAVINA FOSTER, | |
| Defendant. | |

FILED IN OPEN COURT
SEP -5 2019
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## STATEMENT OF FACTS

The United States and the defendant, DAVINA FOSTER (hereinafter, "the defendant" or "FOSTER"), agree that at trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence:

1. The Bureau of Overseas Building Operations (OBO) of the U.S. Department of State (the Department) directs the design, construction, and use of U.S. embassies abroad. During the relevant period of time, FOSTER and Patricia DeLaughter were OBO employees who were responsible for procuring furniture for U.S. embassies. Steven Anstine was the Vice President of Sales for an American furniture company.

2. In or around December 2016, the Department was constructing a new embassy in a foreign nation. FOSTER was tasked with soliciting bid proposals from contractors for the procurement of furniture for the new embassy's offices (the Embassy Furniture Project). DeLaughter also had access to the bid proposals.

3. From in or around December 2016 to in or around March 2017, FOSTER, a present official of the United States Government who, by virtue of that office, employment, and relationship, had access to contractor bid and proposal information and source selection information, knowingly disclosed to Anstine contractor bid and proposal information and source

selection information for the Embassy Furniture Project. FOSTER also intentionally aided and abetted DeLaughter's disclosures to Anstine of contractor bid and proposal information and source selection information for the Embassy Furniture Project. The information that FOSTER and DeLaughter disclosed included bid prices and design plans of at least three bidding companies unaffiliated with Anstine's company. FOSTER and DeLaughter wanted to select Anstine's company for the procurement, which was put up for a competitive bid. FOSTER and DeLaughter disclosed the contractor bid and proposal information and source selection information for the Embassy Furniture Project to Anstine so that his company could win the contract for the Embassy Furniture Project.

4. FOSTER knowingly disclosed, and intentionally aided and abetted DeLaughter in disclosing, this competitor bid and proposal information and source selection information to Anstine before the award of the Department's procurement contract for the Embassy Furniture Project. FOSTER knowingly disclosed, and intentionally aided and abetted DeLaughter in disclosing, this information in order to give Anstine and his company a competitive advantage over the other bidding companies. FOSTER's and DeLaughter's disclosures of the information enabled Anstine to submit the lowest bid for the Embassy Furniture Project to the Department on at least two separate occasions. In or around March 2017, Anstine's company won the contract for the Embassy Furniture Project with a bid of approximately $1,569,000.

5. On or about May 5, 2017, FOSTER was interviewed by Special Agents of the Department's Office of Inspector General. FOSTER made materially false statements during the interview. During the interview, FOSTER knowingly, willfully, and intentionally falsely stated the following:

      a.    Anstine had never asked FOSTER to disclose to him competitor bid and proposal information; and

      b.    Anstine had never offered or given FOSTER anything of value above $25 and she had never gone out drinking with Anstine.

6.    In truth and in fact, FOSTER well knew and believed the following facts when she made each of the above statements:

      a.    in or around January 2017, Anstine asked FOSTER to reveal competitior bid information for the Embassy Furniture Proejct. Moreover, from in or around December 2016 to in or around March 2017, FOSTER knowingly disclosed, and intentionally aided and abetted DeLaughter in disclosing, to Anstine contractor bid and proposal information and source selection information for the Embassy Furniture Project; and

      b.    from in or around January 2014 to in or around February 2017, FOSTER attended lunches, dinners, and drinking events with Anstine. Anstine paid several hundred dollars of FOSTER's expenses.

7.    This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

8.    The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

Date:                                By: _____
　　　　　　　　　　　　　　　　　　　　Russell L. Carlberg
　　　　　　　　　　　　　　　　　　　　Assistant United States Attorney

　　　　　　　　　　　　　　　　　　John D. Keller
　　　　　　　　　　　　　　　　　　Acting Chief
　　　　　　　　　　　　　　　　　　Public Integrity Section

　　　　　　　　　　　　　　　　By: _____
　　　　　　　　　　　　　　　　　　Robert J. Heberle
　　　　　　　　　　　　　　　　　　Deputy Chief
　　　　　　　　　　　　　　　　　　John P. Taddei
　　　　　　　　　　　　　　　　　　Trial Attorney

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, DAVINA FOSTER, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
DAVINA FOSTER

I am Cadence Mertz, defendant's attorney. I have carefully reviewed the above Statement of Facts with her. To my knowledge, her decision to stipulate to these facts is an informed and voluntary one.

_____
Cadence Mertz, Esq.
Attorney for DAVINA FOSTER